AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Eastern District of Virginia

FILED
AUG - 3 2017
CLERK, U.S. DISTRICT COURT

| | |
|---|---|
| United States of America<br>v.<br><br>ABU JALLOH,<br>ALPHA S. BARRIE,<br>MAMADOU A. BAH, and MOHAMED BARRIE<br><br>*Defendant(s)* | )<br>)<br>)  Case No. 3:17 MJ 133<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __April 14, 2017__ in the county of __Chesterfield__ in the __Eastern__ District of __Virginia__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1344 | Bank Fraud |
| 18 U.S.C. § 1349 | Conspiracy to Commit Bank Fraud |
| 18 U.S.C. § 371 | Conspiracy to Traffic in Contraband Cigarettes |
| 18 U.S.C. § 1029(a)(1) | Using an Unauthorized Access Device |
| 18 U.S.C. § 1029(a)(3) | Possession of 15 or more Counterfeit or Unauthorized Access Devices |

This criminal complaint is based on these facts:
See attached affidavit.

☑ Continued on the attached sheet.

Reviewed by AUSA/SAUSA:
Thomas A. Garnett, Assistant US Attorney

*Complainant's signature*

Special Agent Craig Doucette, U.S. Secret Service
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __08/03/2017__

/S/
David J. Novak
United States Magistrate Judge
*Judge's signature*

City and state: __Richmond, Virginia__

Hon. David J. Novak, US Magistrate Judge
*Printed name and title*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
## Richmond Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 3:17mj_____ |
| | ) | |
| ABU JALLOH, et al., | ) | |
| | ) | |
| *Defendants.* | ) | |

## AFFIDAVIT IN SUPPORT OF APPLICATION FOR CRIMNAL COMPLAINT AND ARREST WARRANTS

I, Craig Laurent Doucette, being duly sworn, depose and say:

## INTRODUCTION

1.  I am a Special Agent with the United States Secret Service. I have been employed by the U.S. Secret Service since December 1997, and have been a Special Agent since December 1999. I am currently assigned to the Office of Investigations, Richmond Field Office, and I am a member of the Metro Richmond Identity Theft Task Force. I have conducted investigations of bank fraud, identity theft, and access device fraud cases. I have participated in the preparation and presentation of arrest warrants and search warrants, and I am familiar with the methods of individuals who commit offenses related to manufacturing, using, and possessing fraudulent access devices used to defraud banks.

2.  This affidavit is in support of arrest warrants for MOHAMED BARRIE, ALPHA BARRIE, MAMADOU BAH, and ABU JALLOH.

3.  I have conducted this investigation with assistance from other law enforcement officers, to include Special Agents of the U.S. Secret Service ("USSS"), and detectives from the Chesterfield County Police Department ("CCPD"). This affidavit is based upon my personal

1

knowledge, conversations with other law enforcement agents, source interviews, and examination of various transcripts, reports, and other records. When the contents of documents or statements of others are reported herein, they are reported in substance and part unless otherwise indicated.

4. Because this affidavit is being submitted for the limited purpose of securing arrest warrants for MOHAMED BARRIE, ALPHA BARRIE, MAMADOU BAH, and ABU JALLOH, I have not included each and every fact known to me concerning this investigation. I have set forth facts that I believe are necessary to establish probable cause to believe that MOHAMED BARRIE, ALPHA BARRIE, MAMADOU BAH, and ABU JALLOH have committed violations of Title 18 U.S.C. § 1344 (Bank Fraud); Title 18 U.S.C. § 1349 (Conspiracy to Commit Bank Fraud); Title 18 U.S.C. §§ 371 and 2342 (Conspiracy to Traffic in Contraband Cigarettes); 18 U.S.C. § 1029(a)(1) (Producing or Using an Unauthorized Access Device); and 18 U.S.C. § 1029(a)(3) (Possession of 15 or more Unauthorized or Counterfeit Access Devices).

5. As a result of the initial investigation, described more fully below, there is probable cause to believe that MOHAMED BARRIE, ALPHA BARRIE, MAMADOU BAH, and ABU JALLOH violated federal statutes, including, but not limited to, Title 18 U.S.C. § 1344 (Bank Fraud); Title 18 U.S.C. § 1349 (Conspiracy to Commit Bank Fraud); Title 18 U.S.C. §§ 371 and 2342 (Conspiracy to Traffic in Contraband Cigarettes); 18 U.S.C. § 1029(a)(1) (Producing or Using an Unauthorized Access Device); and 18 U.S.C. § 1029(a)(3) (Possession of 15 or more Unauthorized or Counterfeit Access Devices).

## RELEVANT STATUTES

6. **Bank Fraud (18 U.S.C. § 1344).** Section 1344 criminalizes the knowing execution, or attempted execution, of a scheme or artifice to (1) to defraud a financial institution; or (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by,

or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises.

7. **Conspiracy to Commit Bank Fraud** (18 U.S.C. § 1349). Section 1349 provides that "any person who attempts or conspires to commit any offense under this chapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy."

8. **Conspiracy to Traffic in Contraband Cigarettes** (18 U.S.C. § 371). Title 18 U.S.C. § 2342 criminalizes cigarette trafficking – that is, the transportation and sale of contraband cigarettes. Cigarettes are manufactured with a tax stamp for the state in which they are to be distributed. Transporting more than 10,000 cigarettes from the state in which they are tax stamped to another state without obtaining the proper license or tax stamps for that state in which they are to be sold causes those cigarettes to become, under 18 U.S.C. § 2341, contraband cigarettes. A conspiracy to traffic contraband cigarettes, in violation of 18 U.S.C. § 371, would involve making overt acts in furtherance of the activity; for example, purchasing cigarettes in Virginia.

9. **Use of an Unauthorized Access Device** (18 U.S.C. § 1029(a)(1)). Criminalizes the knowing use, with the intent to defraud, of one or more "counterfeit access devices," which are defined at 18 U.S.C. § 1029(e)(2) as "any access device that is counterfeit, fictitious, altered, or forged, or an identifiable component of an access device or a counterfeit access device."

10. **Possession of 15 or more Unauthorized or Counterfeit Access Devices** (18 U.S.C. § 1029(a)(3)). Criminalizes the knowing possession, with the intent to defraud, of 15 or more counterfeit or "unauthorized access devices," defined at § 1029(e)(3) as "any access device that is lost, stolen, expired, revoked, canceled, or obtained with intent to defraud."

## PROBABLE CAUSE

### A. Initial Stop and Field Interviews

11. Shortly before midnight on March 14, 2017, Chesterfield County Police Department (CCPD) Detective Regan observed two white-colored vehicles, both bearing New York license plates (later identified as a 2016 Nissan Altima bearing New York registration LOVERAB and a 2013 Kia bearing New York registration KHZ4202), each occupied by two black males, repeatedly driving around the parking lot of a Wawa convenience store located at 6001 Iron Bridge Road, Richmond, VA 23234.

12. Detective Regan then observed the two vehicles park on the shoulder of Cogbill Road, rather than using the Wawa parking lot, which was nearly empty at this time of the night. Detective Regan observed the driver of the Nissan exit the vehicle and open the Nissan's trunk. Detective Regan drove past the Nissan and observed approximately 15 Wawa shopping bags which contained cartons of cigarettes in the trunk of the Nissan. Detective Regan then parked his unmarked truck in the Wawa parking lot, in view of the Wawa's cash registers. Detective Regan observed the driver of the Nissan, later identified as MOHAMED BARRIE, and the passenger of the Nissan, later identified as ALPHA BARRIE, walk from their parked vehicle on Cogbill Road into the Wawa store. Detective Regan observed ALPHA BARRIE attempt to use several credit cards to purchase cartons of cigarettes inside the Wawa. Only one of the cards appeared to work, and ALPHA BARRIE used that card to purchase a single carton of cigarettes. Detective Regan also observed MOHAMED BARRIE use a credit card to purchase three cartons of cigarettes – one carton at a time, in three separate transactions. MOHAMED BARRIE also used several different credit cards throughout these transactions. Detective Regan then observed the subjects exit the Wawa and place the cartons of cigarettes into the trunk of the Nissan Altima.

13. It was now past midnight on April 15. Detective Regan followed the Nissan Altima as it drove to a Little Caesar's Restaurant parking lot located next to another Wawa Store located at 11021 Iron Bridge Road, Chester, VA 23831. Detective Regan observed the Nissan park next to the New York-registered Kia (plate number HKZ4202), which Detective Regan had just seen at the previous Wawa. Again, both vehicles parked not in the nearly-deserted Wawa parking lot, but instead in the parking lot of the closed Little Caesar's pizza restaurant. Detective Regan observed all four males exit the two vehicles and begin talking to each other in the parking lot.

14. Detective Regan then observed MOHAMED BARRIE enter the Wawa and – again, swiping multiple credit cards to complete the transactions – purchase several cartons of cigarettes, one carton at a time. MOHAMED BARRIE returned to the vehicles, deposited the cartons of cigarettes, and returned to the Wawa, where he repeated the same process. Detective Regan now believed that the subjects were engaged in both cigarette trafficking and credit card fraud.

15. Detective Regan approached the subjects and identified himself as a Chesterfield County Police Officer. As Detective Regan spoke to the subjects, he observed MOHAMED BARRIE throw multiple credit cards underneath the Kia. Detective Regan placed MOHAMED BARRIE in investigative detention, and told him to sit on the ground. Detective Regan then asked the passenger of the Kia, later identified as MAMADOU BAH, to step out of the vehicle to speak with him. While talking with BAH, Detective Regan observed approximately 20 gift cards under the Kia's passenger seat and approximately 15 bags containing cartons of cigarettes in the back seat of the Kia. Detective Regan placed ABU JALLOH, ALPHA BARRIE, and MAMADOU BAH in investigative detention. Detective Regan then called for back-up to assist in managing the scene while he spoke to the subjects.

5

16. Detective Regan began interviewing the subjects. After providing ABU JALLOH with his Miranda rights, JALLOH told Detective Regan that he (JALLOH) wanted to talk, and explained that the group was buying cigarettes with gift cards that had been re-encoded with stolen credit card numbers on the card's magnetic strips. JALLOH stated the group had approximately 30 gift cards, and that the group had been buying cigarettes in this manner for a "couple of days." JALLOH advised Detective Regan the group had a hotel room where additional cigarettes would be found. While interviewing JALLOH, another CCPD officer advised Detective Regan that he had discovered a credit card embosser (later identified as a credit card encoder) lying in the grass near the Kia. Detective Regan asked JALLOH who used the device, and JALLOH stated that MAMADOU BAH and MOHAMED BARRIE used the device to make cards.

17. Detective Regan next spoke to MAMADOU BAH, providing him with his Miranda rights. BAH agreed to speak with the officer, and admitted the approximately 20 cards next to the passenger door in the Kia sedan were BAH's. BAH claimed he was not the ringleader, and that he had participated in the scheme (purchasing cigarettes with re-encoded cards) a "couple times."

18. Detective Regan then placed the four subjects under arrest for credit card fraud and cigarette trafficking. They were driven to CCPD headquarters for processing and questioning.

19. Upon searching and inventorying the subjects' two vehicles, Detective Regan collected 63 cartons of cigarettes, and 51 cards from the vehicles and the four subjects.

**B. Post-Arrest Interviews:**

20. On April 15, 2017, your affiant interviewed each of the aforementioned four subjects at CCPD Headquarters. Each subject was again provided with his Miranda rights before each interview, and each subject acknowledged those rights before waiving those rights and speaking to law enforcement. The subjects' interviews are very briefly summarized below.

6

21. MAMADOU BAH stated that MOHAMED BARRIE first told BAH about the credit card scheme to buy cigarettes. BAH explained that he had executed this scheme on a prior occasion, travelling to Virginia from New York from March 12–19. BAH stated he travelled with another individual, stopping along the way south in the vicinity of Woodbridge to pick up a credit card encoder from an unidentified black male. BAH stated that he and his companion then picked up two additional men as they travelled south, and that those men stopped at a Wal-Mart along the way, returning with gift cards that BAH assumed were stolen. BAH stated that his companion then used a laptop computer and the encoder device to load credit card numbers onto those gift cards. BAH claimed that he learned from watching his companion that the gift cards could be re-encoded with a new credit card number if the original re-encoded card number failed to work during a transaction. BAH stated the group stayed at the same motel that he and his three friends were staying at in Richmond on this April trip – a Knights Inn located at 7201 West Broad Street, Richmond. BAH claimed that his companion was in charge of re-encoding the gift cards with credit card numbers, and that BAH was promised $15 per carton once the cigarettes were re-sold in New York. BAH knew that he and his friends were only able to purchase up to five cartons of cigarettes at a time in Virginia, and that he and his friends purchased one carton of cigarettes at a time – as observed by Detective Regan – in order to keep the purchase price for that transaction below $50.00. BAH explained that if the purchase price was above $50, the Wawa cashier would request the credit card's CCV number in order to complete the purchase – which BAH and his friend did not have, having purchased only the stolen credit card numbers for re-encoding. BAH stated that upon his return to college in Albany, New York, he began researching the scheme in order to conduct the scheme himself. BAH researched the website that his March companion had used to purchase stolen credit card numbers, located at "dumpsclinique.am," and BAH set up an

7

account on this website with the user name "mbrown6812345678." BAH used Bitcoin to purchase stolen credit card information from dumpsclinique.am. BAH then used a cellular telephone application called "Easy MSR," which connected with the re-encoder device via Bluetooth, to cut and paste the stolen credit card numbers into Easy MSR for subsequent transfer onto the re-encoder device. BAH and his companions then had only to swipe the stolen gift cards through the re-encoder to imprint a stolen credit card number on each gift card's magnetic strip. BAH also explained that he met one of his April companions, MOHAMED BARRIE, in New York in late March, where BARRIE actually paid BAH for BAH's contributions during the mid-March trip to Virginia. BAH stated MOHAMED BARRIE added the website and "Easy MSR" application to his (BARRIE's) phone at about the same time that BAH did. BAH admitted that he and his three companions on this April trip to Richmond had executed the scheme at numerous Wawa stores in the Richmond area the past two days, and that he had been using approximately 25 different re-encoded gift cards given to him by ABU JALLOH. BAH also admitted to throwing the re-encoder out of his vehicle when first confronted by Detective Regan in the Little Caesar's parking lot.

22. ABU JALLOH stated each of the four subjects had his own account to buy stolen credit card numbers and re-encode cards. JALLOH stated MOHAMED BARRIE picked him up Friday, April 7, at JALLOH's home in New York State. JALLOH stated they drove to Virginia and arrived the same night. JALLOH stated he gave MOHAMED BARRIE $400 that he had received from a college refund check to purchase stolen credit card numbers. JALLOH stated he went to Walmart with MOHAMED BARRIE, where the two purchased 25 gift cards. JALLOH claimed that MOHAMED BARRIE then re-encoded the gift cards with stolen credit card information. JALLOH stated the pair then began purchasing cigarettes at various Wawa stores with the re-encoded gift cards. JALLOH stated ALPHA BARRIE arrived in Richmond on

Thursday, April 13, during the day. JALLOH stated MAMADOU BAH arrived early the next morning, on Friday, April 14. JALLOH stated after BAH arrived they went to several Wawa stores to purchase cigarettes with the re-encoded gift cards. JALLOH stated they returned to the Knights Inn at approximately 5:00 a.m., where they remained until beginning the scheme again later that night. JALLOH stated the group brings the cigarettes to New York, where they re-sell the cigarettes. JALLOH admitted that MOHAMED BARRIE had rented the group's hotel room at the Knights Inn, and that the room would have cigarettes in it.

23. **ALPHA BARRIE** stated MOHAMED BARRIE contacted him via cellular telephone prior to the trip, and asked him to come to Virginia. ALPHA BARRIE stated he returned from vacation in Miami on Wednesday, April 12, and then drove to Richmond the next day. ALPHA BARRIE stated he met MOHAMED BARRIE and ABU JALLOH in a parking lot, where they gave him three or four re-encoded gift cards. ALPHA BARRIE admitted to purchasing approximately 13 cartons of cigarettes with those re-encoded gift cards. ALPHA BARRIE stated he purchased three cartons with cash because the re-encoded gift cards did not work.

24. **MOHAMED BARRIE** confirmed he arrived in Virginia with JALLOH the prior week. MOHAMED BARRIE admitted to picking up JALLOH "around his (JALLOH's) area." MOHAMED BARRIE claimed that another individual (not JALLOH) advised BARRIE to rent a motel room in Richmond using false identification belonging to another "Mohamed Barrie," and to rent the motel room for the entire week. MOHAMED BARRIE stated that JALLOH and another individual showed MOHAMED BARRIE both how to use the website (dumpsclinique.am) to buy stolen credit card information, and how to use the application (EasyMSR) to re-encode gift cards with the stolen credit card numbers. MOHAMED BARRIE claimed he was told that he would receive $20 per carton of Virginia cigarettes that were transported to New York and re-sold.

MOHAMED BARRIE admitted to using three of his own credit cards, with stolen credit card information re-encoded on the magnetic strips of his personal credit cards, to purchase cigarettes. MOHAMED BARRIE admitted to using two Chase Visa Debit Cards and one Barclay Card with Apple Rewards in his name to further the scheme. MOHAMED BARRIE stated JALLOH used MOHAMED BARRIE's cellular telephone, and that the pair shared MOHAMED BARRIE's account to re-encode gift cards with the stolen credit card numbers.

### C. Motel Room Search & Wawa Investigation

25. On April 15, 2017, MOHAMED BARRIE provided consent to search his hotel room – Room 2110 – at the Knights Inn located at 7201 West Broad Street, Richmond, VA 23294. CCPD detectives recovered approximately 208 cartons of cigarettes, the box for the re-encoder, a laptop computer, Wawa receipts, several gift cards, mail sent to MAMADOU BAH at the hotel address, and identification documents for JALLOH, among other items.

26. Also on April 15, MOHAMED BARRIE, ALPHA BARRIE, MAMADOU BAH, and ABU JALLOH provided law enforcement with consent to search their cellphones, also providing their passwords for their cellular telephones.

27. On May 3, a Wawa employee provided surveillance video for each of the Wawa receipts recovered in this investigation from the subjects' vehicles, persons, and motel room. The surveillance videos show each of the four subjects of this investigation purchasing cartons of cigarettes with credit cards at the Wawa stores on April 14 and April 15, 2017.

### D. Examination of Subjects' Cellular Telephones

28. Review of the subjects' cellular telephone data has uncovered at least 161 stolen credit card numbers, some of which your affiant has been able to confirm were actually used to make purchases of cigarettes from Richmond-area Wawa stores on April 14 and 15. The phones

10

also contain messages between the subjects regarding the topics of websites to use to purchase stolen credit card numbers, as well as the exchange of stolen credit card numbers between the subjects.

E. **Examination of Recovered Credit Card Numbers**

29. Some 63 physical cards were seized during this investigation. A United States Secret Service preliminary examination of the Bank Identification Number (BIN) of the subject cards and the credit card numbers found on the subjects' cellular telephones revealed the authentic account numbers and the issuing banks. This information was contained on the magnetic strip of the cards, which provides the track information. Of the 63 cards, fifty-one (51) of the subject cards were re-encoded with SunTrust Bank credit/debit account information; another of the cards was re-encoded with the credit account information of a Discover Card customer. As noted above, numerous of those stolen credit card numbers found on the re-encoded gift cards were used to make purchases at Richmond-area Wawa stores on April 14 and 15.

30. Based on my training and experience, this re-encoding is consistent with an illegal identity theft scheme. I am unaware of any legitimate reason why the magnetic strips on the subject cards (which are various retail gift cards), such as the 63 cards examined, would be re-encoded with legitimate debit/credit account numbers belonging to actual bank customers. As noted above, the accounts on the subject cards were issued by several banks, to include:

| BANK/INSTITUTION | LAST FOUR OF ACCT # (Individual Cards) |
|---|---|
| Bank of America | 7619, 8277, 0844, 4981 |
| SunTrust Bank | 9245, 0629, 3567, 9730 |

| Barclay's Bank Delaware | 6814 |
| --- | --- |
| Discover Card Financial Services | 7247, 2021, 0524, 5628 |
| American Express | 1001, 1006, 4008, 5006 |

***NOT AN ALL INCLUSIVE LIST***

31. I am aware that Bank of America, SunTrust Bank, and Barclay's Bank Delaware are financial institutions with their deposits insured by the FDIC.

32. I am also aware that certain states and localities north of Virginia – such as New York State and New York City – impose much higher state and local taxes on the sale of cigarettes than does the Commonwealth. Those comparatively higher taxes have made Virginia-stamped cigarettes a commodity for smugglers, who purchase large amounts of cigarettes in Virginia in order to transport those cigarettes north to the higher-tax jurisdictions for re-sale on the black market (without obtaining the tax stamps required by those jurisdictions).

## CONCLUSION

33. Based upon the facts described throughout this affidavit, I respectfully submit that there is probable cause to believe that MOHAMED BARRIE, ALPHA BARRIE, MAMADOU BAH, and ABU JALLOH, knowingly and with intent to defraud, produced and used counterfeit and unauthorized access devices in order to commit bank fraud and bank fraud conspiracy. Moreover, I submit that there is probable cause to believe that these subjects conspired to traffic in contraband cigarettes, purchasing hundreds of cartons of Virginia-stamped cigarettes in order to transport them north into New York State for re-sale as untaxed, contraband cigarettes.

34. I therefore respectfully request that this Court issue a criminal complaint charging MOHAMED BARRIE, ALPHA BARRIE, MAMADOU BAH, and ABU JALLOH with violating Title 18 U.S.C. § 1344 (Bank Fraud); Title 18 U.S.C. § 1349 (Conspiracy to Commit Bank Fraud);

Title 18 U.S.C. §§ 371 and 2342 (Conspiracy to Traffic in Contraband Cigarettes); 18 U.S.C. § 1029(a)(1) (Producing or Using an Unauthorized Access Device); and 18 U.S.C. § 1029(a)(3) (Possession of 15 or more Unauthorized or Counterfeit Access Devices, as well as issue warrants authorizing their arrest on that criminal complaint.

Craig L. Doucette
Special Agent
United States Secret Service

Sworn to and subscribed
Before me this 3rd day of August, 2017.

/S/
David J. Novak
United States Magistrate Judge

13